IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REGINA BENNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:18-cv-01061-RAH |
| | ) [WO] |
| BUTLER COUNTY BOARD | ) |
| OF EDUCATION, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

This case returns after remand from the Eleventh Circuit Court of Appeals concerning the Title VII race discrimination claim of Plaintiff Regina Bennett. Specific to Bennett, the Court previously granted summary judgment in favor of the Butler County Board of Education ("Board") and against Bennett, finding that Bennett "failed to provide sufficient evidence showing that her reassignment within the same school constituted an actionable adverse action" and that "[h]er subjective and conclusory assertions, like that she was 'set up to fail' or that the position was less prestigious, [were] insufficient." *West v. Butler Cnty. Bd. of Educ.*, 614 F. Supp. 3d 1050, 1067–68 (M.D. Ala. 2022), *vacated in part*, No. 23-10186, 2024 WL 2697987 (11th Cir. May 24, 2024). The Court further found that while Bennett's "transfer, [may be] a personal setback, [it] did not arise to 'severe professional trauma,'" and thus the reassignment did not constitute an actionable adverse action. *Id.* at 1068 (quoting *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998)). While on appeal, the United States Supreme Court released its decision in

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  In that decision, the Supreme Court clarified the inquiry into what constitutes an actionable adverse employment action under Title VII.  After *Muldrow*, the Eleventh Circuit remanded Bennett's case for this Court to re-examine Bennett's claim in light of *Muldrow*.  The Court now does so.

## BACKGROUND

The lengthy facts and background concerning this matter were previously outlined in detail in the Court's summary judgment opinion issued on July 11, 2022.  *See West*, 614 F. Supp. 3d at 1058–62.  But those facts pertinent to the current issue are as follows.

In February 2017, the Butler County Board of Education hired Dr. John Strycker as its new superintendent to revitalize its failing school district.  As part of the overall revitalization and restructuring process, numerous employees were transferred or reassigned.  Bennett, a black female, was one such employee.  She was reassigned from a position as a guidance counselor, a position she had held for sixteen years, to a kindergarten teacher. (Doc. 162-10 at 33–34, 40–41; Doc. 183-1 at 49.)  Bennett's former position was filled by LeNicki Moore, a black female. (Doc. 158 at 5–6; Doc. 159 at 11.)  Bennett suffered no change in compensation, work location, or work hours.

Bennett was given no reason for her reassignment (doc. 162-11 at 9), but the reassignment occurred shortly after a series of disagreements between Bennett and her principal and immediate supervisor, Jacqueline Thornton (black female), who Bennett previously accused of harassing her (doc. 154-9 at 3–5; doc. 162-10 at 47–48, 53, 158–60).

Along with several other affected employees, Bennett filed suit, claiming race discrimination.  She claimed her future job advancement prospects were harmed and that she was transferred to a less prestigious position that had less student impact.

2

(Doc. 162-10 at 33; Doc. 183-1 at 25–26; Doc. 189-5 at 11.) She also claimed that she held a nine-month employment contract, and as a teacher, she now has less opportunities to procure a ten-month contract and a raise. (Doc. 373 at 58.) Her race-discrimination claim against the Board is the only claim remaining.

## STANDARD OF REVIEW

At this stage in the litigation, the Court once again construes all facts in the light most favorable to the nonmoving party, resolving any inferences or disputes of material facts in that party's favor. *See Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). Under this lens, "[s]ummary judgment is [only] proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). Conclusory allegations that lack factual support do not suffice to avoid summary judgment. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citation omitted). "The burden then shifts to the [nonmoving party] to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12 (citation omitted). The Court only considers disputes that involve material facts, and the relevant substantive law that governs the case determines such materiality of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The substantive law applicable here — Title VII — prohibits employers from intentionally discriminating against their employees based on "race, color, religion, sex, or national origin." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)). To survive summary judgment, a plaintiff asserting an intentional discrimination claim under Title VII "must make a sufficient factual showing to permit a reasonable jury to rule in her favor." *Id.* at 1217. In this Court's previous opinion, it found that Bennett woefully lacked direct evidence of intentional discrimination. *West*, 614 F. Supp. 3d at 1064. Thus, to survive summary judgment, she had to either navigate the three-part, *McDonnell Douglas* burden-shifting framework or present a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.

The *McDonnell Douglas* framework and the convincing mosaic are "one and the same—both simply ways to describe the 'ordinary summary judgment standard.'" *Bogle v. Ala. L. Enf't Agency*, No. 23-13947, 2024 WL 4635025, at *4 (11th Cir. Oct. 31, 2024) (quoting *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024)) (explaining that the convincing mosaic theory is no different from the usual summary judgment standard). Regardless of the framework or terminology that the parties employ, the Court's "ultimate task [is] to consider whether [Bennett] put enough evidence in the record to convince a jury that [she] faced [race] discrimination." *McCreight*, 117 F.4th at 1338. Here, regardless of the analytical tool that the Court uses, applying *Muldrow* and the favorable light that the evidence must be viewed from, Bennett has presented sufficient evidence showing that a jury could find that Bennett's reassignment was a form of race discrimination in the

workplace. Because Bennett only invokes the *McDonnell Douglas* framework, that framework will be considered.[1]

Under the *McDonnell Douglas* framework, it is the plaintiff's burden to first establish her *prima facie* case of race discrimination. *Lewis*, 918 F.3d at 1220. To do this, a plaintiff must show: (1) she is a member of a protected class; (2) "she was subjected to an adverse employment action"; (3) the "employer treated 'similarly situated' employees outside her class more favorably"; and (4) she was qualified to perform her job. *Id.* at 1220–21; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam). If the plaintiff meets these four elements, she creates a rebuttable presumption of discrimination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). The burden then shifts to the defendant "to articulate a legitimate, non-discriminatory reason for" the challenged conduct. *Id.* Notably, the defendant's burden at this stage is merely one of production, and it need not "persuade the court that it was motivated by the [proffered] reason." *Id.* By meeting this burden, the defendant eliminates the presumption of discrimination and leaves the plaintiff with the ultimate burden of proving that the defendant acted with intentional discrimination. *Id.* Specifically, the plaintiff must proffer sufficient evidence to create a genuine dispute of material fact as to whether the defendant's proffered reasons are pretextual. Failure to do so entitles the defendant to summary judgment on the claim.

---

[1] Bennett does not have to use the magic words "convincing mosaic" or *McDonnell Douglas* in presenting her arguments for race discrimination. *See McCreight*, 117 F.4th at 1336–38 ("So long as a plaintiff argues that she has presented enough evidence for a reasonable juror to infer intentional discrimination, she has preserved that issue and put the court on notice of the relevant standard. Regardless of the term used—"pretext," "convincing mosaic," "summary judgment"— the substance of the argument is the same."). But because the evidence presented fits easily within a *McDonnell Douglas* analysis and Bennett does not present other evidence of discrimination, the Court need not analyze the same evidence twice to come to the same conclusion. *See id.*

It is undisputed that Bennett is a member of a protected class and that she is qualified to serve as a school counselor, so the Court proceeds through the remaining elements of her *prima facie* case.

A.  **Adverse Employment Action: On Remand after *Muldrow***

The issue on remand is whether Bennett provided sufficient evidence of an actionable adverse employment action when analyzed under *Muldrow*. She bears that burden regardless of whether the *McDonnell Douglas* or a convincing mosaic framework is applied. *See Lewis*, 918 F.3d at 1220 & n.6.

*Muldrow* lightened the load for plaintiffs who seek to establish an adverse employment action. Previously, a plaintiff had to show a "serious and material change in the terms, conditions, or privileges of employment." *West*, 2024 WL 2697987, at *2 (per curiam) (citation and internal quotations omitted). Now, a plaintiff "need only show *some injury* respecting . . . employment terms or conditions" rather than "a significant employment disadvantage." *Muldrow*, 601 U.S. at 359 (emphasis added). In other words, a plaintiff need only show that the "transfer . . . left her worse off[] but need not have left her significantly so." *Id.* A plaintiff no longer must show that the "adverse action specifically involve[d] a reduction in pay, prestige, or responsibility" or that the transfer *substantially* "altered the employee's compensation, terms, conditions, or privileges of employment, deprived . . . her of employment opportunities, or adversely affected his or her status as an employee." *West*, 2024 WL 2697987, at *2 (cleaned up).

In *Muldrow*, the plaintiff alleged that her employer engaged in sex discrimination when she was transferred from her position as a plainclothes officer in a specialized division to a uniformed officer position outside the specialized division. *Muldrow*, 601 U.S. at 350–51. With that transfer, the plaintiff lost "substantial responsibility over priority investigations and frequent opportunit[ies] to work with police commanders" and instead was tasked with the supervision of

6

only "one district's patrol officers," which meant she traded her involvement in "high-visibility matters" for primarily "administrative work." *Id.* at 359. Her "schedule [also] became less regular, often requiring her to work weekends; and she lost her take-home car." *Id.* The only thing that remained the same was her rank and pay. *Id.* at 351. The Supreme Court explained that if all the plaintiff's allegations held sufficient evidence, then she "was left worse off several times over," and remanded the case for the district court to decide whether evidence demonstrated that her transfer indeed left her "worse off." *Id.* at 359.

While *Muldrow* has lowered a plaintiff's burden, *Muldrow* did not change a plaintiff's obligation of presenting actual evidence of "some injury" when viewed by the reasonable person standard; that is, an objective standard based on the evidence. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]he employee's subjective view of the . . . employer's action is not controlling."); *see also Jefferson*, 891 F.3d at 921 ("The impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." (internal quotations and citation omitted)); *cf. Muldrow*, 601 U.S. at 359 (changing *only* the plaintiff's burden from significant injury related to terms and conditions of employment to "some injury").

While it is undisputed that Bennett suffered no change in pay, work hours, or work location as a result of the reassignment, she had "invest[ed her] time, money, and [her] commitment to becoming a better counselor," and her reassignment to a kindergarten teacher position placed her, instead, in a position where she had not had any experience or "professional development" in sixteen years. (Doc. 189-5 at 7.) Bennett also held a nine-month employment contract, and "[a]s a teacher, there [are] less opportunities for [Bennett] to get a [ten-month] contract[,] and there is less room for growth and promotions." (*Id.* at 11.) Bennett has sufficiently shown that these changes constitute at least "*some injury* respecting [Bennett's] . . . employment terms

7

or conditions," such that she has shown that her reassignment has "left her worse off." *Muldrow*, 601 U.S. at 359 (emphasis added). Therefore, employing the some-injury standard, Bennett has satisfied the requisite showing of an adverse employment action.

**B.     Similarly Situated Employee Treated More Favorably**

Bennett also satisfies the next prong of the framework: the treatment of a similarly situated employee outside her protected class more favorably. *See Lewis*, 918 F.3d at 1220–21. The next prong of *McDonnell Douglas* is met when the plaintiff presents "evidence of a comparator." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022); *see Lewis*, 918 F.3d at 1218 (explaining that a plaintiff is required to provide the court with a sufficient comparator at the *prima facie* stage). To present sufficient comparator evidence, a plaintiff "must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" *Lewis*, 918 F.3d at 1218. This standard does *not* require a plaintiff to offer an employment-doppelganger except for their protected characteristic. *Id.* at 1226. Comparators do not have to have the same job title or exactly the same job responsibilities—the relevant inquiry is whether the employer subjected the comparator and plaintiff to different employment policies. *Id.* at 1227 (citing *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)). Basically, a valid comparison turns on substantive likenesses—"not . . . formal labels." *Id.* at 1228. While these rules serve as a guidepost, "precisely what sort of similarity the in 'all material respects' standard entails [must] be worked out on a case-by-case basis, in the context of individual circumstances." *Id.* at 1227. And this *objective* analysis of whether a plaintiff chose a valid comparator asks whether that plaintiff and her comparator can "reasonably be distinguished." *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). If they can be, then the two are not similarly situated in all material respects. "An employer is well within its rights to accord different

treatment to employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." *Id.* "Treating *different* cases differently is not discriminatory." *Id.* at 1222–23.

Here, LeNicki Moore, a black female who the Board transferred from another school within the school district, replaced Bennett as W.O. Parmer Elementary School's guidance counselor. (Doc. 154-8 at 5; Doc. 159 at 11; Doc. 165-8 at 168–69.) Thus, Bennett argues that the school district should be viewed as a whole—not as individual schools and places of employment—and that her comparators should be the three guidance counselors within the school district who are white, who did not receive a reassignment, and who all work at different schools: Charles T. Henderson (white male), Tonya Coker (white female), and Haden Horton (white female). (Doc. 183-1 at 27; Doc. 373 at 13.) She urges that while "none of the [w]hite counselors have the same first-level supervisor" as her, the counselors are still valid comparators because Dr. Stryker and the Board are the counselors' "second and third level supervisors," none of the counselors were "subject to different personnel policies, procedures, rules [or] workplace guidelines" (doc. 183-1 at 27), "all counselors have the same job description," and under the Students First Act, *see* Ala. Code (1975) § 16-24C-7(b), and the Board's Policy Manual, the superintendent may make reassignments within his "professional judgment" (*id.* at 28). She argues that with these statements, the evidence of the job description, and the language of both Alabama law and the Board's Policy Manual, that she has shown that she is similarly situated with the three white counselors. (*Id.*)

The Board argues that Bennett has no valid comparator and therefore cannot support a *prima facie* case because 1) Bennett was replaced with an individual of the same protected class and 2) Bennett cannot point to another counselor to whom she was similarly situated yet treated differently *and* who was under the supervision of

9

Ms. Thornton, principal of W. O. Palmer Elementary School and Bennett's immediate supervisor. (Doc. 159 at 29.)

The Board is wrong. Just because an employee is replaced by someone of her same protected class does not automatically mean that the employee cannot establish a *prima facie* case. *See Howard v. Ry. Exp., Inc.*, 726 F.2d 1529, 1534 (11th Cir. 1984). Instead, the relevant inquiry is whether Bennett can provide evidence showing the Board treated her differently than someone similarly situated to her. *See Lewis*, 918 F.3d at 1218. And here, Henderson and Coker pass the test.[2]

The record reveals that Bennett, Henderson, and Coker cannot be "reasonably . . . distinguished," *id.* at 1228 (quoting *Young*, 575 U.S. at 231), because they have the same job title, job description, same employer (the Board), and they have the same "second and third level supervisors." (Doc. 183-1 at 27.) While the Board is correct in that all guidance counselors directly report to their respective principals, the requirement that a plaintiff and the proposed comparator share the same immediate supervisor is not absolute. *See Lewis*, 918 F.3d at 1228. More importantly, the Board's stated rationale for its differing immediate supervisor argument is problematic because there is a question of fact about whether the school principals actually recommended the guidance counselors' transfers and

---

[2] Ms. Horton is not a valid comparator. Ms. Horton is only similar in *some* material respects—she is not "similarly situated in *all* material respects." *Lewis*, 918 F.3d at 1218 (emphasis added). Here, there is a material difference in that Ms. Horton's immediate supervisor expressly opposed Ms. Horton's transfer (doc. 159 at 10; doc. 165-8 at 192), and there is no evidence of Bennett's immediate supervisor opposing her reassignment (doc. 154-9 at 5). There is no dispute that Ms. Horton's immediate supervisor expressly opposed Ms. Horton's transfer. (Doc. 165-8 at 192–93; Doc. 167-12 at 279–80; Doc. 168-1 at 295; Doc. 159 at 10.) And the only evidence presented that concerns Principal Thornton's attitude toward Bennett's reassignment is that she was amicable to the reassignment. (Doc. 183-1.) Regardless of who the ultimate decisionmaker was, an objective analysis "in the context of [this case's] individual circumstances" of the fact that an immediate supervisor expressly opposed Ms. Horton's transfer, "reasonably distinguishe[s]," her from Bennett such that Ms. Horton is an *invalid* comparator. *Lewis*, 918 F.3d at 1227–28.

reassignments (and therefore put the wheels in motion) or whether the transfer directives came directly from the Central Office.

For example, Bennett presented an email from the Board's Administrative Assistant, Joe Eiland, to Principal Thornton, directing Principal Thornton to "copy/paste" her recommendation to reassign Bennett to Principal Thornton's letterhead and thanking her for her "cooperation in [the] matter." (Doc. 186-1.) And Dr. Strycker testified in his deposition that he "rel[ied] on Joe and Lisa's [(administrators in the Central Office)] recommendation" when he approved Bennett's reassignment from a guidance counselor to a kindergarten teacher. (Doc. 165-8 at 180; Doc. 183-1 at 19.)

Viewing the evidence in the light most favorable to Bennett, a reasonable jury could find that the decision to reassign Bennett came from Dr. Strycker or members of the Board and not her immediate supervisor (Principal Thornton). All told, Bennett has presented sufficient evidence to create a question of fact on this issue, and therefore Bennett has sufficiently met her burden to establish her *prima facie* case of race discrimination.

C.   **The Board's Legitimate, Nondiscriminatory Reason for Bennett's Reassignment**

Because Bennett has established her *prima facie* case of race discrimination, the Board bears the burden "to articulate a legitimate, non-discriminatory reason for" Bennett's reassignment. *See Cleveland*, 369 F.3d at 1193. Again, the Board's burden at this stage is merely one of production, and it need not "persuade the [C]ourt [that] it was motivated by the [proffered] reason." *Id.* "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106

11

F.3d 1519, 1528 (11th Cir. 1997) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 257 (1981)).

As for the decision to reassign Bennett, the Board states as follows in its summary judgment brief:

> Ms. Bennett's principal reassigned her after . . . W.O. Parmer lost a half counseling unit. The unit was reassigned as a teaching unit and Ms. Thornton elected to use it for [Response to Instruction ("RTI")] purpose[s], a more focused form of instruction for students in need of extra assistance. . . . Ms. Bennett was not RTI trained in academics. Bennett's reassignment was initiated by her immediate supervisor, Principal Jackie Thornton. . . . Thornton . . . testified that [her] legitimate reasons for reassigning Bennett [were] to best allocate the personnel resources at her school after her school lost [half] of a counseling unit (which was reallocated as a teaching unit). Principal Thornton thought it was in the best interest of the students at her school to reassign Ms. Bennett to the reallocated teaching unit.

(Doc. 159 at 29–30.)

This is a legitimate, nondiscriminatory reason to reassign Bennett. So, the burden shifts back to Bennett to show that this stated reason was a pretext for discrimination.

To show pretext, Bennett can identify weaknesses, inconsistencies, or contradictions in the Board's articulated reasons for its actions such that a reasonable factfinder would find them unworthy of credence. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). In other words, Bennett cannot merely attempt to recast the articulated nondiscriminatory reasons or substitute her business judgment for that of the Board. A reason cannot be pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

As evidence of pretext, Bennett points to the Board's shifting, inconsistent, and nebulous reasons for her reassignment. The Eleventh Circuit has been clear that

evidence of an employer's "shifting explanations for its actions" can constitute sufficient evidence of pretext. *See Cleveland*, 369 F.3d at 1194 ("These inconsistent reasons allowed the jury to question his credibility. Once [the decisionmaker's] credibility was damaged, a rational jury could infer that he did not fire [the plaintiff] because of the infomercial, but rather because of her disability."); *Bechtel Constr. Co. v. Sec'y of Lab.*, 50 F.3d 926, 935 (11th Cir. 1995) ("The pretextual nature of [the decisionmaker's] terminating [the plaintiff] is further demonstrated by [the decisionmaker's] shifting explanations for its actions."). The Eleventh Circuit has also recognized that vague and nebulous reasons can constitute evidence of pretext. *See Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (rejecting the statement that a candidate was best qualified as too vague because it "leaves no opportunity for the employee to rebut the given reason as a pretext"). Indeed, a "subjective reason is a legally sufficient, legitimate, nondiscriminatory reason only if the [employer] articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc); *see also Burdine*, 450 U.S. at 255–56 (discussing that a defendant must present its legitimate, nondiscriminatory reason with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext).

     Bennett points to an inconsistency within the Board's "legitimate reasoning" for her reassignment. She argues that while one of the Board's reasons for reassigning her was that she was not RTI trained, her replacement LeNicki Moore "does not possess any type of certificate indicating she is RTI trained." (Doc. 183-1 at 30; Doc. 154-9 at 5 (discussing Moore's training in *aspects* of RTI but failing to assert that Moore holds a certificate in RTI training).) And even though she also lacks RTI certification, Bennett previously was asked to and *provided RTI services*

13

when she was a guidance counselor. (Doc. 183-1 at 30.) Bennett also points to the fact that while Principal Thornton claims to have initiated Bennett's reassignment, the Board's Policy Manual and the Students First Act both state that the decision to make reassignments belong to a chief executive officer or the superintendent, and Principal Thornton is neither of those. (*Id.* at 31.)

Further, Bennett points to the inconsistency between Principal Thornton's affidavit and Dr. Stryker's deposition. While Principal Thornton's affidavit states that "Bennett's reassignment was solely [her] decision and did not require approval from the BCBOE," that she "advised the central office of [her] intent to reassign Ms. Bennett toward the end of the 2018 spring semester," and that she "unders[tood] that Dr. Strycker then advised the Board of [her] decision for informational purposes only," (doc. 154-9 at 5), Dr. Stryker testified that he "took the recommendations of 'Lisa' and 'Joe' as to . . . Bennett's reassignment." (Doc. 183-1 at 32.) Bennett argues that the shifting inconsistencies between the explanation for her reassignment and the shifting explanation as to who had authority over her reassignment are pretext for discrimination. These shifting, somewhat inconsistent and vague reasons are sufficient evidence for Bennett to meet her burden to show the Board's reasons may be pretextual. *See Cleveland*, 369 F.3d at 1194; *Bechtel Constr. Co.*, 50 F.3d at 935.

Bennett has adequately shown material issues of fact as to whether the proffered reasons for her transfer were the true reasons for the employment decision as to Bennett. Accordingly, summary judgment as to Bennett's race discrimination claim is due to be denied.

## CONCLUSION

After applying the some-injury standard to the adverse employment action prong and considering the evidence in the light favorable to Plaintiff Regina Bennett for the rest of the pertinent inquiry, the Board has not shown its entitlement to

14

summary judgment as to Bennett's race discrimination claim against it. Accordingly, it is hereby ORDERED that the Defendant's *Motion for Summary Judgment* as it relates to Regina Bennett (doc. 150) is DENIED.

    **DONE** and **ORDERED** on this the 3rd day of January 2025.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE